## Wytheville.

EUBANK *v.* BOUGHTON.

JULY 5, 1900.

Absent, Riely, J.*

1. MANDAMUS—*Public Officers—Discretion.*—The writ of *mandamus* is the appropriate remedy for compelling the performance, by a public officer, of a duty which is either imposed upon him by law, or necessarily results from the office which he holds. It does not lie in any matter requiring official judgment, or resting in sound discretion. It may require an inferior officer to act, but the character of the action cannot be affected.

2. SCHOOL TRUSTEES—*Duties—White and Colored Children—Decision as to Color—Appeal—Mandamus.*—It is the duty of school boards to assign white children to white schools, and colored children to colored schools, but whether a child is white or colored is a fact to be determined by the board, and involves the exercise of a judicial discretion on the part of the board which the courts cannot control. If the party aggrieved is dissatisfied with the action of the board, an appeal is allowed him to the county superintendent of schools, and, this being an adequate remedy, *mandamus* will not lie.

Error to a judgment of the Circuit Court of King and Queen county, rendered March 7, 1900, on an application for a writ of *mandamus*, wherein the defendant in error was the petitioner, and the plaintiffs in error were the respondents.

*Reversed.*

The opinion states the case.

*Judge Riely was prevented by sickness from attending this term.

*Claggett B. Jones,* for the plaintiffs in error.

*Isaac Diggs,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

George Boughton filed his petition in the Circuit Court of King and Queen county, praying for a *mandamus* upon Eubank, Latane, and Deshazo, District School Trustees for Stevensville District, in said county, in which he states that he is a voter, a tax-payer, and head of a family, with two children between the ages of five and twenty years, who reside with him in the district and county aforesaid; that he and his wife and children are white, and his children are entitled to attend the public free school for white children, but that they have been refused admission by the trustees, and he therefore prays for a *mandamus,* directed to the trustees above named, to compel them to receive his son into the school set apart for white children. The trustees answered, saying that, in the exercise of their discretion, they had refused to grant the request of petitioner because they were informed and believed that the child of petitioner is a negro, and to permit him to attend the school for white children would not only materially interfere with its prosperity and efficiency, but, in their judgment, would destroy it.

Upon the issue thus made, testimony was taken, and the Circuit Court, being of opinion that it established the fact that petitioner's son "has not one-fourth of negro blood in him," and is, therefore, a white person, awarded the writ of *mandamus.* This judgment is before us upon a writ of error.

The writ of *mandamus* is the appropriate means of compelling the performance, by a public officer, of a duty which is either imposed upon him by some express enactment, or necessarily results from the office which he holds. It does not lie in any matter requiring official judgment, or resting in sound discretion, for in such a case the court can do no more than compel

the officer to exercise his function according to some discretion
when he has refused or neglected to act at all. By it, an inferior
court may be directed to hear a case, but the decision to be ren-
dered cannot be affected. Spelling on Extra. Relief, sections
1432, 1433; *Thurston* v. *Hudgins*, 93 Va. at p. 784.

Section 1492 of the Code provides, among other things, "that
white and colored persons shall not be taught in the same
schools, but in separate schools, under the same general regula-
tions as to management, usefulness, and efficiency."

Section 1466 makes it one of the duties of the boards of school
trustees "to explain and enforce the school laws and regula-
tions." When, therefore, application was made to the Board to
admit to a white school the son of petitioner, it became at once
the duty of the Board to ascertain before granting or refusing
the request whether the child of petitioner was a white person
or a negro—that is to say, whether he had more than one-fourth
of negro blood, for that is the test established by section 49 of
the Code, which declares that "every person having one-fourth
or more of negro blood shall be deemed a colored person."

It is the duty of the Board to assign white children to schools
for white children, and it is none the less their duty to assign
colored children to the schools for colored children. When the
question arises as to the color of a particular applicant, the
Board must take evidence, and make such disposition of the mat-
ter as shall seem right. Here, then, is a duty which calls for the
exercise of judicial discretion. It is true that, when the fact is
ascertained, the duty is plain. When the status of the applicant
is fixed by the judgment upon the evidence, the law itself assigns
him to the proper school. The law has seen fit to confide the
determination of the question to a board of school trustees, and
the discharge of the duty thus imposed upon the board involves,
as we have seen, the exercise of a judicial discretion, and the
court cannot control its exercise. But the decision of the board
is not final. If petitioner felt himself aggrieved by its action, he

had, under the eighth sub-division of section 1439 of the Code, a right of appeal to the County Superintendent of Schools, who is given jurisdiction to "decide finally all appeals or complaints concerning the acts of any persons connected with the school system within his bounds, unless the matters in question are properly referable to other authorities." So there are two grounds upon which the judgment complained of must be reversed. It undertakes to control the official judgment of the Board of Trustees in the exercise of a discretionary power specially confided to them by the statute, and the petitioner is given a remedy by appeal to the County Superintendent.

"Where a party aggrieved by the action of a board of school directors has an adequate remedy by appeal to the county superintendent, he is not entitled to a writ of *mandamus*." Spelling on Extra. Relief, section 1445; *Marshall* v. *Sloan*, 35 Iowa, 445; *Barnett* v. *Directors of Ind. Dis.*, 73 Iowa, at p. 134; *Mitchell et als.* v. *Witt, Judge, ante* page 459.

For the foregoing reasons, we are of opinion that the judgment of the Circuit Court must be reversed, with costs.

*Reversed.*