# Staunton

W. E. DAVIS v. THOMAS C. ALLEN, REGISTRAR.

September 17, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Browning, JJ.

The opinion states the case.

*A. W. E. Bassette, Jr.*, and *J. Thomas Newsome*, for the plaintiff in error.

*Roland D. Cock*, for the defendant in error.

EPES, J., delivered the opinion of the court.

On October 5, 1929, W. E. Davis made application to
T. C. Allen, registrar of Court House precinct in the city of
Hampton, Virginia, for registration as a voter in that
precinct. The registrar refused to register him on the
ground that Davis had failed to make application in proper
form and to answer to the satisfaction of the registrar certain
questions affecting his qualifications as an elector.

Proceeding in accordance with the provisions of section
103, Code Va. 1919, Davis appealed to the Circuit Court of
Elizabeth City county, which has jurisdiction in the matter,
to have his right to register determined. The case was
heard by the court on the petition of Davis, the answer of
the registrar, the application made by Davis to the reg-
istrar, the questions submitted orally by the registrar to
Davis and by him written down, the answers of Davis to
these questions written in his own handwriting, Davis'
receipted tax tickets for 1926, 1927 and 1928, and the
testimony given by Davis before the court. The court sus-
tained the action of the registrar, and dismissed the peti-
tion, to which judgment Davis has been granted a writ
of error.

Omitting the formal parts, the answer of T. C. Allen, the
registrar, reads:

"The plaintiff in said petition appeared before your re-
spondent as set forth in said petition, but failed to make
application in proper form and to answer to the satisfaction
of this respondent certain questions affecting the petitioner's
qualification as an elector and that therefore this respondent
refused to register him. Attached hereto is the original
application of the said petitioner, together with the questions
asked and his answers thereto."

The application made by Davis, together with the ques-
tions asked him and his answers thereto, are as follows:

"Hampton, Va., Oct. 5, 1929
"to the Registrar Courthouse
"Precinct Dear Sir I W. E. Davis hereby apply for Regis-

tration to vote in Courthouse Precinct Elizabeth City County. My age is 48 years was born at Jamesville, N. C. the 27 Day of May 1881, I now reside at 34 Union St in the City of Hampton Va have lived there for the past 26 years my occupation is Skill Labor and have Been for the past 2 years I have never voted

"Very Respectfully,
"W. E. DAVIS

"*Queston.* What is *ment* By Legal *Residenct* in Va

"Answer. All persons Who have lived in the Stat—for one year are a Legal *Residenter*

"Question. When is the Payment of Poll Tax Not *Requared*

"Answer. After a *Pearson* have *obtaine* the age of sixty years

"Question. What are the *Requisites* to enable one to Register in Va

"Answer he will have to Be 21 years of age and a citizen—of the State for one year in the City Town or county for 6 *month* Precinct in which he *ofers* to vote 30 Days and Pay all State Tax for 3 years Back say for 1926, 27 & 28 and * * * ."

This record presents only two questions:

(1) Is the application made by Davis sufficient in law?

(2) Do said questions and answers show that Davis lacks the qualifications prescribed by the Constitution for an elector or is by the Constitution excluded from registering and voting?

The decision of these questions is determined by sections 18 and 20 of the Constitution of Virginia, material parts of which read as follows:

"Section 18. *Qualification of Voters.*—Every citizen of the United States, twenty-one years of age, who has been a resident of the State one year, of the county, city, or town, six months, and of the precinct in which he offers to vote,

thirty days next preceding the election in which he offers to vote, has been registered, and has paid his State poll taxes, as hereinafter required, shall be entitled to vote for members of the General Assembly and all officers elected by the people * * .

"Section 20. *Who May Register.*—Every citizen of the United States, having the qualifications of age and residence required in section eighteen, shall be entitled to register, provided:

"First. That he has personally paid to the proper officer all State poll taxes legally assessed or assessable against him for the three years next preceding that in which he offers to register; * * * and,

"Second. That, unless physically unable, he make application to register in his own handwriting, without aid, suggestion, or memorandum, in the presence of the registration officer, stating therein his name, age, date and place of birth, residence and occupation at the time and for the one year next preceding, and whether he has previously voted, and, if so, the State, county, and precinct in which he voted last; and,

"Third. That he answer on oath any and all questions affecting his qualifications as an elector, submitted to him by the registration officer, which questions, and his answers thereto, shall be reduced to writing, certified by the said officers, and preserved as a part of his official records."

■ The application filed by Davis is not in good form, and shows that he has comparatively little education. But was made and signed by him in his own handwriting, in the presence of the registrar, without aid, suggestion or memorandum; is addressed to the proper officer; gives substantially the information which section 20 of the Constitution requires that it shall give; and discloses nothing for which the Constitution provides that a person shall be excluded from registering and voting. Such an application for registration is sufficient in law.

■ But in order that the registrar may determine whether the applicant in fact possesses the qualification for an elector prescribed by the Constitution, section 20 further provides that the applicant must "answer on oath any and all questions affecting his qualifications as an elector, submitted to him by the registration officer." If he refuse to answer proper questions submitted to him by the registrar, or if his answers to such questions show that he does not in fact possess the constitutional qualifications of an elector or is a person who is excluded from registering and voting by section 23 of the Constitution, it is the duty of the registrar to refuse to register him.

■ However, the questions which the registrar may propound to the applicant are limited to "questions affecting his qualifications as an elector" as prescribed by the Constitution.

■ The Constitution has prescribed as a qualification for an elector no test of knowledge or understanding or educational requirement other than that the applicant shall be able to make in his own handwriting, without aid, suggestion or memorandum, the required application and answer in writing "questions affecting his qualification as an elector" which may be submitted to him by the registrar.

The language of the Constitution as ordained and proclaimed by the Constitutional Convention of 1902, and as amended in 1928, makes this plain. But this is made even plainer, if it can be made any plainer, by the report of the proceedings had in the Constitutional Convention of 1902 relating to the adoption of the sections of the Constitution relating to the elective franchise. See Debates Constitutional Convention 1901-02, pages 3937-3980.

One of the principal questions before the Constitutional Convention of 1902 was whether the Constitution should prescribe a test of knowledge or understanding as a qualification to register and vote; and it was long and ably debated.

The Convention adopted two very different provisions relating to the qualification and registration of electors, sections 19 and 20. Section 19, spoken of as the temporary provision for registration, prescribed the prerequisites for the registration of persons applying for registration during 1903 and 1904. Section 20, spoken of as the permanent provision for registration, prescribed the prerequisites for the registration of persons applying for registration after January 1, 1904.

Section 19 provided, that at the general registrations held in 1902 and 1903 every male citizen of the United States, having the qualifications of age and residence required by section 18 of the Constitution, should be entitled to register, if he either had certain qualifications which have no direct relation to education, knowledge, or understanding *or* if he "was able to read any section of this Constitution submitted to him by the officers of registration and to give a reasonable explanation of the same; or, if unable to read such section, able to understand and give a reasonable explanation thereof when read to him by the officers. (Constitution 1902, section 19.)

But, after much debate, the Convention refused to incorporate in the permanent provision for registration the above quoted educational requirement or test of knowledge or understanding incorporated in section 19, or any like provision; and adopted section 20, reading, so far as is here material, as section 20 now reads.

Perhaps the first question propounded to Davis may be sustained as a permissible question; but if this be a proper question, the answer given by Davis, while showing his lack of education, is substantially a correct answer thereto. But the second and third questions propounded to Davis by the registrar elicit no information from him with reference to any qualification which he is required by the Constitution to have to register and vote, or with reference

to the existence of any cause for which the Constitution provides that he shall be excluded from registering and voting. They seem designed to test his knowledge or understanding of the law relating to the general subject, who may register and vote. The Constitution has not made the perfect knowledge or understanding of these things a prerequisite to his own registration; and the registrar was not authorized to refuse him registration because of his failure to correctly answer these questions. Neither his knowledge or lack of knowledge of these subjects, nor his proficiency or deficiency in education as disclosed by his answers to these questions, has any bearing on whether he is, or is not, entitled to register and vote.

The registrar erred in refusing to register Davis, and the trial court erred in sustaining the action of the registrar.

The judgment of the court will be reversed, and an order here entered directing Thomas C. Allen, registrar of Court House precinct, in the city of Hampton, Virginia, to register the said W. E. Davis as a voter in said precinct upon the application made and filed by him on October 5, 1929.

*Reversed.*

HOLT, J., dissenting:

No general educational qualification is required of one who desires to register. He may believe that the Polish corridor has to do with architecture and that the Rosetta stone was a crown jewel of Egypt, and yet be eligible. All that he can be questioned about are qualifications as to the age and residence and about the prepayment of poll taxes declared to be prerequisite to the right to vote. Sections 18, 20 and 21 of the Constitution. He, the applicant, must "answer on oath any and all questions affecting his qualifications as an elector." Constitution, section 20. If those interrogatories propounded to him touch upon such matters, they are plainly competent; otherwise not.

This applicant submitted to the registrar his petition for enrollment required by said section 20. That application was so polished in its accuracy that it was reminiscent of a night school, and the suspicion thus aroused was amply confirmed by his subsequent examination, the questions and answers in which were written by the applicant.

He was first asked:

"*Queston* What is *ment* by Legal *Residenct* in Va," and answered: "All persons Who have lived in the Stat—for one year are a Legal *Residenter.*"

This question is conceded to be permissible and it is said that the answer is substantially correct. It is certainly not accurate.

He was next asked: "When is the Payment of Poll Tax Not *Requered.*" He answered: "After a *Pearson* have *obtaine* the age of sixty years."

This answer was all wrong. Said section 20 declares that the applicant must have first "personally paid to the proper officer all State poll taxes legally assessed or assessable against him * * ." Certain it was that the prepayment of the necessary poll taxes affected his qualification. Just what prepayment was necessary is made plain by section 20 itself, and until it had been made registration was not proper; and so I think it plain that he could be questioned as to it.

Finally he was asked: "What are the *Requsites* to enable one to Register in Va." His answer is: "He will have to Be 21 years of age and a citizen—of the State for one year in the City Town or county for 6 *month* Precinct in which he *ofers* to vote 30 Days and Pay all State Tax for 3 years Back say for 1926, 27 and 28 and * * ."

This question is but a paraphrase of the caption to said section 20, which reads: "who may register." That section tells what a man must do before he can register, and this applicant, with parrot-like precision, had already filled out

properly the written application required of him, as he had been taught to do, but when cross-examined it immediately became apparent that he was wholly ignorant of the most elementary requirements.

All of this, I think, is too explicit to require elaboration. Every question asked was about matters "affecting his qualifications" and is not affected by the fact that it was in form general and applied to other applicants also. The language of the Constitution is too clear to require construction, and so it is wholly unnecessary to examine the debates of the Constitutional Convention to ascertain what was meant. Dubious statutory provisions are to be construed, but those plain upon their face require no construction. In the instant case we have a coached applicant, who repeated verbatim what he had been taught to write and who manifestly had no idea what it was all about.

As I see it, the substance of the court's opinion is that an applicant who has complied with the formal requirements of section 20 must be received, and that the power which is given the registrar to question him as to his qualifications as an elector might as well never have been written.