# Richmond

## Leslie Francis Griffin, Jr., an Infant, Suing by L. F. Griffin, Sr., His Father and Next Friend, and L. F. Griffin, Sr. v. Board of Supervisors of Prince Edward County.

March 5, 1962.

Record No. 5390.

Present, All the Justices.

*S. W. Tucker (Henry L. Marsh, III, on brief), for the petitioners.*

*J. Segar Gravatt (Frank N. Watkins, Commonwealth's Attorney; Collins Denny, Jr., on brief), for the respondent.*

*Frederick T. Gray, Attorney General (Kenneth C. Patty, Assistant Attorney General; R. D. McIlwaine, III, Assistant Attorney General, on brief), for the Commonwealth, amici curiae.*

Eggleston, C. J., delivered the opinion of the court.

This is an original petition for a writ of mandamus filed by Leslie Francis Griffin, Jr., an infant, suing by L. F. Griffin, Sr., his father and next friend, and by L. F. Griffin, Sr., in his own right, hereinafter referred to as the petitioners, to compel the Board of Supervisors of Prince Edward county, sometimes hereinafter referred to as the respondent, to appropriate and make available to the School Board of that county sufficient funds for the operation and maintenance for the 1961-1962 school term, and subsequent terms, of such public free schools as in the judgment of the School Board the public welfare requires. The matter is before us on the petition, the answer and a stipulation, from which these facts appear:

Both petitioners are citizens of the Commonwealth of Virginia, residing in Prince Edward county. The infant petitioner is within the age limits of eligibility to attend public schools and possesses the qualifications necessary for admission thereto. His father, the adult petitioner, is a taxpayer of the Commonwealth and of Prince Edward county.

Beginning with the fiscal year 1959-1960, and thereafter for each succeeding fiscal year, the School Board has prepared and submitted to the Board of Supervisors an estimate of the amount of money deemed necessary for the maintenance and operation of public schools in the county. For each of these fiscal years the Board of Supervisors has failed and refused to appropriate any money for such purpose. However, for the fiscal year 1961-1962 it appropriated the

sum of $285,000 for "Educational Purposes in furtherance of the elementary and secondary education of children residing in Prince Edward county in private nonsectarian schools to be expended as may be provided by Ordinance and pursuant to Section 141 of the Constitution of Virginia," as amended.

The petition alleges that the respondent's failure and refusal to appropriate funds for the maintenance and operation of public free schools in the county was occasioned by the decision of the United States Court of Appeals for the Fourth Circuit, on May 5, 1959, that white and colored children should be enrolled and taught together. *Allen* v. *County School Board of Prince Edward County*, 4 Cir., 266 F. 2d 507. However, in the petitioners' brief it is "conceded" that the motives which prompted the inaction on the part of the Board of Supervisors are immaterial to the issues involved in the present litigation.

The petitioners further point out in their brief that "there are no Federal questions [involved] in this proceeding," and we perceive none.

The petition further alleges that "by reason of Article IX of the Constitution of Virginia, and particularly Sections 129 and 136 thereof, and the several statutes which have been enacted pursuant to said article, it is the duty of the respondent board of supervisors to appropriate money to be used by the County School Board of Prince Edward County for the maintenance and operation of such public free schools as in the judgment of said school board the public welfare may require."

The respondent denies that these or any other provisions of the Constitution of Virginia, or of any statute enacted by the General Assembly, "impose a duty upon the said Board of Supervisors to appropriate any revenue under its control for the operation of schools." It alleges that its failure to levy taxes and make appropriations for the maintenance and support of such schools are matters which "are wholly within the legislative discretion vested in said Board of Supervisors under the Constitution and laws of Virginia and are not subject to control by the judicial process by writ of mandamus as prayed for in the petition."

Thus the pleadings present to us these questions: (1) What is the duty imposed by law on the Board of Supervisors of Prince Edward county with respect to appropriations for the maintenance and operation of public free schools? (2) Will a writ of mandamus lie to

compel that Board to perform such duties as are imposed on it by law with respect to such appropriations?

The argument on behalf of the petitioners runs thus: Section 136 of the Constitution imposes on the Board of Supervisors the *mandatory duty* of levying and collecting local school taxes for establishing and maintaining such schools as in the judgment of the local school authorities the public welfare may require; the Board of Supervisors is a mere administrative agency with respect to such duties and is vested with no legislative discretion therein; hence, mandamus will lie to require it to perform its duties in this respect.

The substance of the argument of the Board of Supervisors is that it is the legislative department of the county; that in levying taxes and appropriating local funds it exercises a legislative function and is vested with a discretionary power as to what taxes, if any, will be levied and appropriated, and that such discretion is not subject to judicial control.

Section 136 of the Constitution reads thus:

"Each county, city or town, if the same be a separate school district, and school district is *authorized* to raise additional sums by a tax on property, subject to local taxation, not to exceed in the aggregate in any one year a rate of levy to be fixed by law, to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining such schools as in their judgment the public welfare may require; provided that such primary schools as may be established in any school year shall be maintained at least four months of that school year, before any part of the fund assessed and collected may be devoted to the establishment of schools of higher grade. The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes." (Emphasis added.)

Article IX of the Constitution, embracing the subjects of "Education and Public Instruction," contemplates that moneys for the establishment and maintenance of public free schools will be appropriated partly by the General Assembly and partly by the local governing units. Section 136 provides for the raising by local taxation of "additional sums," that is, sums in addition to those which the General Assembly may appropriate pursuant to the preceding sections of the Constitution.

The provisions of Section 136 are implemented in Code, §§ 22-126

and 22-127, as amended. Section 22-126, as amended, reads as follows:

"Each county, city, and town if the town be a separate school district, *is authorized* to raise sums of money by a tax on all property, subject to local taxation, at such rate as may be deemed sufficient, but in no event more than three dollars on the one hundred dollars of the assessed value of the property in any one year to be expended by the local school authorities in establishing, maintaining and operating such schools as in their judgment the public welfare requires and in payment of scholarships for the furtherance of elementary or secondary education and transportation costs as required or authorized by law; * * *." (Emphasis added.)

Section 22-127, as amended, reads:

"The governing body of any county, city, or town if the town be a separate school district, *may, in its discretion,* make a cash appropriation, either annually, semi-annually, quarterly, or monthly, from the funds derived from the general county, city, or town levy and from any other funds available, of such sums as in its judgment may be necessary or expedient for the establishment, maintenance and operation of public schools, and/or for educational purposes." (Emphasis added.)

We find in neither Section 136 of the Constitution nor in the statutes implementing it, any support for the petitioners' contention that the Board of Supervisors is under the mandatory duty to levy local taxes and appropriate moneys for the support of public free schools in the county.

By the first sentence of the constitutional provision the local political unit "is authorized" to raise additional sums, to be apportioned and expended by the local school authorities. It will be noted that such political unit "is authorized," not "required," to raise the additional sums. The words "is authorized" denote a grant of power and discretion to act, but not a command or requirement to act. According to Webster's Third New International Dictionary, Unabridged, "authorized" means "endowed with authority," "sanctioned by authority." As we said in *Superior Steel Corp.* v. *Commonwealth*, 147 Va. 202, 205, 136 S. E. 666, 667, "one is 'authorized' when he possesses the authority to act."

Nor do we agree with the contention on behalf of the petitioners that the closing sentence of the constitutional provision, "The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide

for the levy and collection of such local school taxes," imposes a mandatory duty on the Board of Supervisors to levy and appropriate these moneys. This sentence merely designates the governing bodies of the respective political units which "shall provide for the levy and collection of *such* local school taxes" (emphasis added), that is, the local school taxes which are "authorized" to be levied by the first sentence in the section.

This interpretation of the constitutional provision is quite in accord with our previous decisions. In *School Board of Carroll County v. Shockley*, 160 Va. 405, 168 S. E. 419, we had under consideration an act of the General Assembly requiring the board of supervisors of Carroll county to make a special levy, in addition to all other levies, and directing that the proceeds of such special levy be used solely for the purpose of erecting and equipping a high school building in the town of Hillsville in that county. We held that the act was in conflict with Section 136 of the Constitution which lodged in the local authorities the exclusive power to determine what additional sums, if any, should be raised by local taxation, and that that power could not be taken away by the General Assembly.

After reviewing the various provisions of Article IX of the Constitution relating to "Education and Public Instruction," and what funds must be appropriated by the General Assembly for that purpose, we thus defined the purpose and meaning of Section 136:

"Considering these clear and unqualified provisions, as placed in the Constitution, and in connection with the related provisions thereof, it is obvious that it was the purpose of this section to vest in the local authorities of each county and school district of the State the *exclusive power* to determine *what additional sums, if any*, should be raised by local taxation to supplement the funds provided by the State for the support of the schools in the respective counties and school districts; and the *exclusive power* to levy the tax for school purposes on the property specified, *if any is imposed*, subject only to the limitation that *if any tax at all is levied* it shall not 'exceed in the aggregate in any one year a rate of levy to be fixed by law.' (Emphasis added.)

"The local authorities of each county and school district being thus vested with the exclusive power to impose local taxes for school purposes under this section, the necessary implication is that the General Assembly is prohibited by the Constitution from exercising that power." 160 Va., at page 413.

This interpretation, which is quite applicable in the present case, was reaffirmed in *Almond* v. *Gilmer*, 188 Va. 1, 26, 49 S. E. 2d 431, 444.

The discretionary nature of the right, power or authority of the board of supervisors to determine what sums, if any, should be raised by local taxation for the support of public schools was also reaffirmed in *Scott County School Board* v. *Board of Supervisors*, 169 Va. 213, 217, 193 S. E. 52, 54. In that case the county school board filed in this court an original petition for mandamus to compel the board of supervisors to impose a levy sufficient "to take care of the budget" prepared by the school board. The school board asserted that the board of supervisors had "no discretion in acting upon the school budget," but "must raise the necessary revenue to take care of" such budget as submitted. (169 Va., at page 215, 193 S. E., at page 53.) We denied the writ on the ground that mandamus did not lie "to control [the] discretion" to curtail the school budget which the statute (Code of 1936, § 657)[1] had lodged in the board of supervisors. 169 Va., at page 217, 193 S. E., at page 54.

See also, *Board of Supervisors of Chesterfield Co.* v. *County School Board*, 182 Va. 266, 280, 281, 28 S. E. 2d 698, 705, in which we affirmed the holding of the trial court that "the board of supervisors has the right, within the limits prescribed by law, *in their discretion*, to fix the amount of money to be raised by local taxation for school purposes at whatever amount they see fit." (Emphasis added.)

It is clear, then, that Section 136 of the Constitution and Code, §§ 22-126 and 22-127, as amended, which implement the constitutional provision, vest in the Board of Supervisors of Prince Edward county the discretionary power and authority to determine "what additional sums, if any, should be raised by local taxation to supplement the funds provided by the State for the support of the schools" in the county. *School Board of Carroll County* v. *Shockley, supra,* 160 Va., at page 413.

Whatever may be the duty imposed under Section 129 of the Constitution, that section is plainly directed to the General Assembly and not to the local governing bodies. It says, "The General Assembly shall establish and maintain an efficient system of public free schools throughout the State." Hence, we are not concerned in the present proceeding with the application of that provision. But

---

[1] *Cf.* Code of 1950, 1960 Cum. Supp., §§ 22-120.3 and 22-120.4.

it is important to compare the mandatory wording of that section with the discretionary language employed in Section 136.

■ We do not agree with the petitioners' contention that the concluding sentence of Section 136, which provides that "The boards of supervisors of the several counties, and the councils of the several cities and towns, * * * shall provide for the levy and collection of such local school taxes," imposes on these local governing units merely ministerial duties. There is no constitutional mandate as to how these levies and collections shall be made, and as we have said, the concluding sentence of the section vests this function in these local governing units. This is in accord with the provision in Section 111 of the Constitution that the board of supervisors of a county "may * * * lay the county and district levies."

Since the early days of the Commonwealth, we have repeatedly pointed out that the exercise of the power of taxation is a legislative function. See 18 Mich. Jur., Taxation, § 5, p. 127 ff., where numerous cases are collected. The same is true when the power is exercised by a local governing unit. *Southern Railway Co. v. City of Danville*, 175 Va. 300, 305, 7 S. E. 2d 896, 898.

■ It is firmly settled in this State that mandamus is the proper remedy to compel the performance of a purely ministerial duty, but does not lie to compel the performance of a discretionary duty. 12 Mich. Jur., Mandamus, § 6, p, 340 ff.; Burks Pleading and Practice, 4th Ed., § 199, p. 322; *Scott County School Board v. Board of Supervisors, supra*, 169 Va., at page 217, 193 S. E., at page 54; *State Board of Education v. Carwile*, 169 Va. 663, 673, 194 S. E. 855, 859; *Fleenor v. Dorton*, 187 Va. 659, 664, 47 S. E. 2d 329, 332.

Whether mandamus will lie to compel the levy and assessment of taxes depends upon whether the duty with respect to that matter is ministerial or discretionary. If ministerial, the writ will lie; if discretionary, as is the case here, mandamus will not lie. 34 Am. Jur., Mandamus, § 214, pp. 982, 983; 55 C. J. S., Mandamus, § 182-b(4), pp. 355, 356. Application of this distinction has been recognized and applied in prior decisions of this court.

In *Supervisors of Cumberland County v. Randolph*, 89 Va. 614, 16 S. E. 722, relied upon by the petitioners, we affirmed a judgment of the county court awarding a mandamus compelling the board of supervisors to levy a tax to pay certain coupons on bonds which had been issued by the county. This was because, we said, the particular statute there involved required the levy and made the duties of the

board of supervisors with respect thereto "purely ministerial." 89 Va., at page 622.

On the other hand, in *Scott County School Board* v. *Board of Supervisors, supra,* we denied a writ to compel the board of supervisors to impose a levy sufficient to take care of the budget prepared by the school board, on the ground that mandamus did not lie to control the discretion which had been lodged in the board of supervisors with respect to the matter. 169 Va., at page 217, 193 S. E., at page 54.

It is not our function here to say whether the action of the Board of Supervisors of Prince Edward county in refusing to make these appropriations is proper, wise, or desirable. Our duty is merely to determine whether it may be compelled to do so by a writ of mandamus. In our view it may not be so compelled.

The Constitution of Virginia vests in the legislative department of the government the duty, power and authority to establish and maintain public free schools throughout the State. To grant the writ in this proceeding would amount to an invasion by the judicial department of those functions of the legislative department. It would mean that this court may substitute its discretion for that vested by law in the local legislative body. Clearly, under the division of powers embodied in our Bill of Rights (Constitution, § 5), we may not do this.

For these reasons the writ prayed for is denied.

*Writ denied.*